WIENER, Circuit Judge,
dissenting:
I respectfully dissent. I am convinced that the majority opinion misapprehends the nature of, or glosses over, Marco’s substantive due-process claim, grounded as it is in the RTA’s knowing and deliberate disregard of Louisiana’s public bid law (and its own announced procedure), despite such law having been expressly incorporated by reference in the RTA’s enabling act.
I. ANALYSIS
The State’s bid law has long been recognized as creating a constitutionally protect *676 ed property interest in the entitlement of the lowest — or, as in this case, the highest — responsible bidder (hereafter, “best bidder”) to be awarded the advertised contract.[1] One obvious purpose of the bid law is to protect the public fisc by ensuring that the people pay the lowest price available for qualified work (or, as here, receive the most revenue for the privilege granted)[2]; another is to protect the property right of the best bidder to be awarded the advertised contract. Thus, for a bidder successfully to assert a § 1983 due-process claim, he must establish that the contract at issue is subject to the State’s public bid law, that he is the best bidder, and that he has been wronged by the agency’s awarding of the contract to another party. Marco’s establishing of these elements would entitle it to pursue Fourteenth Amendment due-process claims under § 1983, both substantive and procedural. Even when, for today’s purposes, I accept without granting that the panel majority has gotten the procedural due process facet of Marco’s claim right, that procedural placebo, viz., Marco’s pre- or post-deprivation access to the State’s courts, falls far short of being a panacea for Marco’s substantive due-process ills, much less the only available cure.
Instead of forthrightly deciding the sole legal issue addressed by the parties and by the district court, i.e., whether Louisiana’s public bid law even applies to the RTA’s letting of the instant contract (I believe that the bid law applies and would so hold on appeal), the majority leaves that question unanswered and merely assumes ar-guendo that these laws do apply and that Marco has established that it is the best bidder and thus entitled to due process protection.[3] Having thus set up the procedural due process strawman through such assumptions, though, the panel majority proceeds to knock it down, in disregard of Marco’s substantive due process claim, by conclusionally declaring, without any discussion of the facts or analysis of the law, that the “RTA’s decision to award the Contract to Clear Channel instead of Marco is not so arbitrary as to ‘shock the conscience.’ ” According to the panel majority, then, solely because Marco had the option of resorting to state court (don’t we all?), its entitlement to seek relief there after being arbitrarily and capriciously denied its best-bidder’s right to be awarded the contract somehow satisfies the pre-deprivation administrative procedure that due process expressly requires. For the majority, then, the RTA’s refusal to follow the presumably applicable state bid law— and its own announced procedures — which is designed to protect, inter alia, a best bidder’s constitutional property right, is somehow not so unconstitutionally egregious as to warrant access to, and the attention of, the federal courts. In other words, just because we say so, the RTA’s patent disregard of the substantive due process rights guaranteed to Marco under the United States Constitution cannot be rectified in federal court in a § 1983 action.
As I find the panel majority’s reasoning to be fatally flawed, I too shall proceed (as *677 does the panel majority) on the assumption that Marco is entitled to both procedural and substantive due process before it may be deprived of its conceded property right, and shall illustrate how Marco’s constitutional right is violated.
Adverting to substantive due process solely in footnote 3 of its opinion, the panel majority conclusionally declares that “Marco does not have a viable substantive due process claim.” Yet, the majority never tells us why not. It simply stands mute as to the reasons for concluding that Marco has no substantive due-process claim. To me, that alone would justify a dissent. I shall do more, however, by explaining why I am convinced that Marco does indeed have a viable substantive due-process claim, which it is entitled to pursue in federal court § 1983.
As the majority explains, and I agree, “[sjubstantive due process ‘bars certain arbitrary, wrongful government actions Here, Marco’s substantive due process claim is supported by a plethora of discrete allegations of how the RTA arbitrarily and capriciously disregarded state law — more accurately, how it affirmatively rejected the state bid law as totally inapplicable — by knowingly thumbing its nose at Louisiana’s bid requirements and, in an exercise of agency fiat, blatantly handing the contract to an inferior bidder after colluding with that bidder to make its bid the best. It is obvious to me that these shenanigans unquestionably resulted in the deprivation of Marco’s constitutionally-recognized and constitutionally-protected property right, as the putative best qualified bidder, to have the contract awarded to it. Lest there be any doubt about the RTA’s audacious euchring of Marco out of the subject contract, I reiterate here the RTA’s machinations as alleged by Marco (which must be credited at this stage of the proceedings):
• The RTA’s Request For Proposals (“RFP”) for the subject contract was not furnished to Marco despite its previous requests for notice of the initiation of any solicitation for transit advertising.
• Similarly, Marco was not informed of the RTA’s pre-bid conference on the contract.
• Of six proposals received by the RTA, Marco’s was patently the best from all standpoints (guaranteed payments, percentage of revenues, contractor media, bartered print and broadcast media, and marketing analysis), and Clear Channel’s proposal was a distant third.
• Post-bidding, RTA subjectively evaluated the proposals with a previously-undisclosed, arbitrarily weighted formula, baldly adding $1.5 million to Clear Channel’s proposal for non-monetary benefits over ten years (which one of the other contractors had also agreed to do yet got no “bonus” for) and adding another bonus ($1.7 million) for non-monetary benefits proposed by Clear Channel, which no other bidder was advised it could submit. Even with this “artificially enhanced figure,” Clear Channel’s score remained short of the 60 maximum points that only Marco’s bid had achieved.
• Also post-bid, RTA assigned to Clear Channel a 10-point bonus for compliance with Disadvantaged Business Enterprises (“DBE”) despite having stated that no such goals had been established for the subject project and despite obvious non-compliance by Clear Channel.
• When all of the foregoing post-bid machinations failed to move Clear Channel ahead of Marco, the RTA allowed Clear Channel (and only Clear Channel) to revise its bid by (1) increasing its guaranteed payment from $10,186,000 to $13,386,000, (2) increasing its estimated *678 revenues by 40% above its original proposal, and (3) artificially inflating its bid above those of Marco and the original second-place bidders.
• After accomplishing the foregoing legerdemain, the RTA declared Clear Channel the best bidder even though— despite those post-bidding unilateral changes — Clear Channel’s proposal guaranteed only $10,186,000, still more than $3 million less than Marco’s guarantee.
Assuming, as we must, for purposes of the four-part test for granting a TRO or preliminary injunction, that Marco could prove these allegations, they are quintessentially arbitrary and capricious, and more than sufficient to satisfy the element of likelihood of success, entitling Marco to such a restraint.
Typically, the focus of substantive due-process claims in the area of public bid laws is whether the awarding authority has arbitrarily or capriciously designated an inferior contender as the best responsible bidder. In almost every such case, the awarding authority acknowledges (or is at least aware) that it is subject to the bid law, but — at least allegedly — has failed to follow the statutory or regulatory bid rules. Here, in contrast, the RTA has denied from the outset that, in awarding this revenue-producing contract, it is subject to the state bid law at all and, as such, has insisted that its bidders have no constitutionally-protected property rights. The RTA insists further that, for its own reasons — or for no reason — it was also free to disregard its own bid proposal guidelines with impunity, simply because of the revenue nature of the contract it was awarding.
As noted, we are asked to decide whether Marco was arbitrarily denied its status as the best responsible bidder, allegedly accomplished by the RTA’s capricious favoring of an inferior bidder to the exclusion of Marco, through its conceded disregard of the bid law and the refusal to follow that law and its own announced procedures by self-servingly labeling them as inapplicable. Indeed, to this day, that is the totality of what the RTA relies on, viz., its (erroneously) asserted right to award the instant revenue contract without complying with the public bid law, which is expressly made applicable to the RTA in its enabling statute, and which incorporation by reference contains no limitations of applicability to public works and purchases of materials or supplies.
If, as I advocate, we were to remand, and the fact finder were to determine that Marco somehow was not the best responsible bidder, then Marco will have no protected property interest to enforce in a § 1983 action. But the panel majority has conceded for purposes of today’s decision, that Marco is the best responsible bidder. As such, we must treat Marco as having a protected property interest that may not be abrogated by the whim (or worse) of the RTA — at least not without violating Marco’s substantive due-process rights. It smacks of Lewis Carroll to say that the RTA did not act arbitrarily and capriciously despite (1) self-servingly declaring itself free of the restrictions of the bid laws, (2) conducting its bid process in knowing disregard of its own announced procedures, (3) colluding with the third best of six bidders to enhance that bidder’s proposal post-submission, i.e., after “going to school” on Marco’s bid, and (4) ultimately awarding the contract to its favored bidder, regardless of its own pre-award guidelines. I cannot see how this willful — and thus arbitrary and capricious — behavior does not shock the majority’s conscience: Even as jaded as I have become from living in New Orleans and seeing almost daily media reports of this kind of behavior *679 by local agencies, the RTA has managed to shock my conscience in this instance.
II. CONCLUSION
As I see it, the panel majority skirts the sole issue that controlled this case in the district court and that the parties have briefed and argued on appeal, viz., whether the enabling act of the RTA, in incorporating the Louisiana public bid law, makes that law applicable to the award of this particular RTA contract — a question that the majority labels “a difficult and unclear claim under Louisiana law.” With respect, I do not find it that difficult, because I stop with the plain wording of the RTA’s enabling act and refrain from trying to divine unspoken legislative intent in the face of clear and unambiguous statutory language. We should not be “lawyering” the case as an advocate for one of the parties. I acknowledge that it is generally preferable to avoid reaching a difficult issue of law by resolving a case on a clear and easy one — and that may well be what the majority means to do here. But, I cannot see that we have such a path available to us today. Our only options are to hold that Louisiana’s bid law does or does not apply here; and then, depending on our answer, either (1) reverse and remand or (2) affirm. We should not tiptoe around that issue by, sua sponte, going off on the nature of Marco’s clearly established due process, property-right claim and latching onto a procedural, state statutory standing provision as a means of disposing of this appeal. It is for these reasons that I cannot concur in the panel majority opinion, and instead must respectfully dissent.

. Haughton Elevator Div. v. Louisiana Ex Rel. Div. of Admin., So.2d 1161, 1165 (La.1979). The State's bid laws can create a property interest in either the lowest or highest responsible bidder, depending on the nature of the contract at issue.

. Smith v. Town of Vinton, 216 La. 9, 43 So.2d 18, 21-22 (1949) (quoting Boxwell v. Dept. of Highways, 203 La. 760, 14 So.2d 627, 631 (1943)).

.Marco’s objective allegations, if proved, leave no doubt that its bid was easily the best of the six received by the RTA' — -at least before the RTA massaged Clear Channel's bid to elevate it above Marco’s and one other that also had topped Clear Channel’s original bid.